**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN  DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| VS. | * | |
| | * | NO:  4:06CR00271-01  SWW |
| DAVID BURNETT | * | |
| | * | |

**ORDER**

Defendant David Burnett ("Burnett") is charged with possession with intent to distribute 50 grams or more of methamphetamine and knowingly possessing a firearm in furtherance of drug trafficking.  Before the Court is Burnett's motion to suppress evidence and statements (docket entry #18).  The United States filed a response in opposition (docket entry #20), and the Court held an evidentiary hearing on Burnett's motion on March 29, 2007.  The parties have filed post-hearing memoranda (docket entries #25, #26), and the matter is ready for decision. After careful consideration, and for the reasons that follow, the motion to suppress will be denied.

**I.**

Based on testimony and evidence presented at the March 29 hearing, the Court makes the following findings of fact.  On January 18, 2006, at approximately 9:10 a.m, Burnett was traveling east on Interstate 40 in Lonoke County, driving a 2005 Lincoln Navigator with a California license plate.  Arkansas State Police Corporal Victor D. Coleman ("Coleman")

observed Burnett's vehicle cross the right fog line into the right shoulder and then reenter the interstate. Believing that Burnett had committed a lane violation, Coleman activated his blue lights and stopped Burnett.

Coleman requested Burnett's driver's license and registration and directed him to exit and stand behind the Lincoln Navigator. In response to questioning, Burnett told Coleman he had rented the Lincoln Navigator and was traveling home to Tennessee. Burnett stated that he had been in California shopping for antique car parts. He also stated that he was accompanied by another vehicle that left California ahead of him. Burnett was unable to produce a vehicle rental agreement, and he told Coleman that it might be in one of his bags or in the vehicle accompanying him. Coleman asked Burnett whether he had ever been arrested, and Burnett answered, "No." Coleman asked Burnett whether the contents of the vehicle belonged to him, and Burnett answered, "Yes." Coleman then asked whether Burnett had any drugs or guns in the vehicle, and Burnett answered, "No."

Next, Coleman sought Burnett's consent to search by asking, "Can I search the vehicle? Is that okay with you?" or "I am going to take a look in the car if that's okay with you." In either case, the Court finds that Coleman sought Burnett's consent to search. Coleman testified that Burnett answered "yes" in response to his request to search, and Burnett testified that he answered, "All right, okay." Additionally, the undisputed evidence shows that Burnett also responded with a hand gesture, which, the Court finds, reinforced Coleman's belief that Burnett was giving him permission to search the vehicle.

After Burnett's affirmative responses to Coleman's request to search, Coleman opened the passenger-side door and found an empty ammunition magazine in plain view on a console

between the front seats. After finding the magazine, Coleman handcuffed Burnett for safety reasons and searched the back of the vehicle, where he found a locked money bag. Coleman asked Burnett if he had a key to the bag, and Burnett responded, "Not on me; I think it's in the other car."

Coleman placed Burnett in the patrol car and contacted Blue Lightening, an intelligence resource. After making initial contact with Blue Lightening, Coleman left the car, cut open the money bag with a knife, and discovered a vehicle rental agreement and methamphetamine. Coleman informed Burnett, who was sitting in the patrol car, that he was under arrest for possession of an illegal substance. Coleman then re-entered the patrol car and resumed his conversation with a Blue Lightening operator. Among other things, Coleman told the operator that Burnett had consented to the search. Coleman, and another officer who arrived on the scene, continued searching the Lincoln Navigator and found a gun and records documenting drug transactions.

## II.

Burnett seeks suppression of all physical evidence resulting from the search and "any statements made as a result thereof." Docket entry #25, at 12. In support of his motion, Burnett asserts that (1) Coleman lacked probable cause or reasonable suspicion to stop him, and (2) Coleman lacked probable cause, consent, or any valid basis to search the Lincoln Navigator.

**A. The Stop**

Burnett argues that Coleman lacked probable cause to stop his vehicle because crossing of the fog line does not amount to a violation of Arkansas law. A traffic stop is reasonable under the Fourth Amendment if supported by either probable cause or reasonable suspicion that a

traffic violation, however minor, has occurred. *See U.S. v. Herrera-Gonzalez,* 474 F.3d 1105, 1109 (8th Cir. 2007)(citing *United States v. Washington,* 455 F.3d 824, 826 (8th Cir.2006)). A determination of objective reasonableness is not to be made in hindsight, but by looking to what the officer reasonably knew at the time. *Id*. Additionally, an officer's actual motivation in making a stop is irrelevant in determining the validity of the stop. *Id*. (citing *Whren v. United States,* 517 U.S. 806, 813 (1996)).

At the suppression hearing, Coleman testified that he stopped Burnett for crossing the white fog line and driving on the right shoulder, in violation of Arkansas Code § 27-51-308. Section 27-51-308 sets forth the conditions during which one vehicle may overtake another on the right and provides, in part, that "in no event shall this movement be made by driving off the pavement or main-traveled portion of the roadway." Ark. Code Ann § 27-51-308(b)(2). Burnett argues that because Coleman did not observe him passing another vehicle on the right, Coleman could not have reasonably believed that he witnessed a violation of § 27-51-308.

Even if Coleman was mistaken that crossing the fog line is a violation of § 27-51-308, the stop was lawful if Coleman had probable cause to believe that Burnett violated any traffic law. *See Lawyer v. City of Council Bluffs,* 361 F.3d 1099, 1106 (8th Cir. 2004)(holding that an arrest during a traffic stop is lawful where an officer has probable cause to believe the subject violated any applicable statute, even one not contemplated by the officer a the moment of the arrest). Another Arkansas statute, Arkansas Code § 27-51-302, provides that whenever any roadway has been divided into two or more lanes, "[a] vehicle shall be driven as nearly as practical entirely within a single lane . . . ." Section 27-51-302 has been interpreted to prohibit crossing over the fog line, *see U.S. v. Pulliam*, 265 F.3d 736, 739 (8th Cir. 2001), and

there is no dispute that Coleman observed Burnett cross the fog line.  Accordingly, the Court finds that Coleman had an objectively reasonable basis to believe that Burnett violated Arkansas traffic law, and the stop was legal.

### B.  Post-Stop Investigation and Search

After a legal traffic stop, an officer may inquire about a driver's destination and purpose, check his license and registration, and direct him to step over to patrol car without transgressing the Fourth Amendment. *See U.S. v. Linkous,* 285 F.3d 716, 719-21 (8th Cir.2002).  Additionally, officers "may ask a person for consent to search or other types of cooperation without violating the Fourth Amendment as long as they do not induce cooperation by coercive means." *Luna* 368 F.3d 876, 879 (8th Cir. 2004)(citing *United States v. Martinez,* 358 F.3d 1005, 1009 (8th Cir.2004)).   The United States maintains that Coleman had Burnett's consent to search the Navigator.  It is the United States' burden to show that a reasonable person in Coleman's position would have believed that Burnett gave consent that was the product of an essentially free and unconstrained choice, and that he comprehended the choice that he was making.  *See U.S. v. Coney,* 456 F.3d 850, 860 (8th Cir. 2006)(quoting *U.S. v. Cedano-Medina*, 366 F.3d 682, 684 (8th Cir. 2004)).  In determining whether consent to search was voluntary and not coerced, a court must consider the totality of the circumstances, including characteristics of the accused and details of the interrogation, to decide whether the consent was a product of a free and unconstrained choice or the product of duress or coercion, express or implied. *U.S. v. Luna* 368 F.3d 876, 878 (8th Cir. 2004)(citing *United States v. Mancias*, 350 F.3d 800, 804-05 (8th Cir.2003)).

Burnett argues that Coleman did not ask him if he could search the vehicle, and he

communicated that he was going to search, regardless of whether he obtained consent. The video recording of the traffic stop contains poor audio of the conversation between Coleman and Burnett while the two were standing at the side of the interstate. However, testimony from Burnett and Coleman confirm that Coleman asked Burnett if he could "look in" or "search" the Lincoln Navigator, and Burnett responded with an affirmative verbal response and an affirmative hand gesture. The Court finds that Coleman asked for Burnett's consent to search, and Burnett gave his consent with affirmative verbal and gestural responses.

Burnett maintains that his verbal and gestural responses did not amount to freely given consent, that he was merely giving in to Coleman's show of authority. According to Burnett, from the beginning of the traffic stop, Coleman treated him as though he had complete authority over his actions by ordering him out of his vehicle, ordering him to stand in a specific spot, and barking orders to produce a rental agreement. However, based on a careful review of the video and hearing testimony, the Court finds that Coleman's pre-search investigation was well within the Fourth Amendment, and he did nothing to create a coercive environment. *See U.S. v. Linkous,* 285 F.3d 716, 719-21 (8th Cir.2002) (officer making traffic stop does not violate Fourth Amendment by asking driver for his destination and purpose, checking license and registration, or requesting driver to step over to patrol car).

Burnett argues that the search was not consensual because when Coleman asked him if he could search the vehicle, Coleman was holding his driver's license and he was not free to terminate the encounter. However, consent is not the product of coercion merely because the officer requesting consent has not finished his investigation of the driver's license or returned the license. *See United States v. Siwek,* 453 F.3d 1079, 1084 (8th Cir. 2006)( citing *United States v.*

*Fuller*, 374 F.3d 617, 622 (8th Cir.2004)).  Furthermore, an officer is not required to inform a subject that he is free to leave and refuse a search before consent to search may be deemed voluntary.  *Id*.

Burnett argues that his alleged lane violation was merely pretext for the stop and that "Coleman had to be aware of the heightened feeling of intimidation it causes when the driver knows he has been stopped for a reason other than the one the officer alleges."  The Court's review of the video confirms that Burnett remained calm and cooperative throughout the stop, and he showed no signs of intimidation.  A person can render a search legal "by behaving in such a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented, whether or not the person actually intends to consent."  *Coney*, 456 F.3d at 860.  The Court declines to speculate that, despite Burnett's calm demeanor, Coleman had to be aware that he was, in fact, intimidated.

Examining the totality of the circumstances, the Court finds that a reasonable person in Coleman's position would have believed that Burnett gave his voluntary consent to search and that he comprehended the choice that he was making.  Burnett, an English-speaking adult with a GED, testified that he had no difficulty understanding Coleman at the time of the stop.  Burnett testified that he was high on methamphetamine at the time of the stop, but the recording of the stop shows Burnett to be alert and responsive, and no evidence supports his claim that he was under the influence of methamphetamine.

The Court also finds that Burnett never limited or withdrew his consent, either expressly or impliedly, and that Coleman's search did not exceed the scope of the consent.  Immediately before Burnett gave his consent, Coleman asked him whether he was transporting drugs or guns.

7

Accordingly, it was objectively reasonable for Coleman to believe that Burnett's consent extended to any area or container where drugs or guns might be stored. *See Florida v. Jimeno,* 500 U.S. 248, 251-52 (1991) (consent to search car included consent to search containers that might hold drugs).

Based on the credible evidence presented, the Court finds that Burnett voluntarily consented to the search, and there is no basis for suppressing the physical evidence seized.

**C.  Statements**

Burnett asserts that any statements he made as a result of the traffic stop and search should be suppressed as fruit of the poisonous tree. Because the Court finds that no Fourth Amendment violation occurred as a result of the traffic stop or the search in this case, Burnett's fruit-of-the-poisonous-tree argument must fail.

Burnett has not moved for suppression of statements based on a violation of *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Further, it is not clear from the record whether Burnett made incriminating statements in response to a custodial interrogation before receiving *Miranda* warnings, or whether the Government intends to proffer such statements at trial. Accordingly, the Court is unable to determine whether Burnett made any incriminating statements subject to suppression under *Miranda*.

III.

For the reasons stated, Defendant's motion to suppress evidence and statements (docket entry #18) is DENIED. As explained above, the Court makes no findings as to whether Defendant made statements subject to suppression under *Miranda v. Arizona,* 384 U.S. 436, 444 (1966).

IT IS SO ORDERED THIS 7TH DAY OF MAY, 2007.

                                              <u>/s/Susan Webber Wright</u>
                                              UNITED STATES DISTRICT JUDGE