**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN  DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * * * * | |
| VS. | * * | NO:  4:06CR00271-01  SWW |
| DAVID BURNETT | * * * | |

**ORDER**

On August 24, 2007, Defendant David Burnett ("Burnett") filed a second motion to suppress evidence (docket entry #31),  and the United States filed a  response in opposition (docket entry #32).  The Court held a hearing on the motion on September 4, 2007 and issued an oral ruling from the bench denying Burnett's motion.  This order reduces the Court's findings to writing.

**I.**

Based on evidence received during the hearing on  Burnett's first motion to suppress held on March 29, 2007, the Court previously made the following findings of fact:[1]

1. On January 18, 2006, at approximately 9:10 a.m, Burnett was traveling east on Interstate 40 in Lonoke County, driving a 2005 Lincoln Navigator with a California license plate.

2. Arkansas State Police Corporal Victor D. Coleman ("Coleman") observed

---

[1] The findings are set forth in more detail in an order entered May 7, 2007, denying Burnett's first motion to suppress.  *See* docket entry #27.

    Burnett's vehicle cross the right fog line into the right shoulder and then reenter the interstate. Believing that Burnett had committed a lane violation, Coleman activated his blue lights and stopped Burnett.

3.  Coleman requested Burnett's driver's license and registration and directed him to exit and stand behind the Lincoln Navigator. In response to questioning, Burnett told Coleman he had rented the Lincoln Navigator and was traveling home to Tennessee.

4.  Burnett stated that he had been in California shopping for antique car parts. He also stated that he was accompanied by another vehicle that left California ahead of him. Burnett was unable to produce a vehicle rental agreement, and he told Coleman that it might be in one of his bags or in the vehicle accompanying him.

5.  Coleman asked Burnett whether he had ever been arrested, and Burnett answered, "No." Coleman asked Burnett whether the contents of the vehicle belonged to him, and Burnett answered, "Yes." Coleman then asked whether Burnett had any drugs or guns in the vehicle, and Burnett answered, "No."

6.  Next, Coleman sought Burnett's consent to search by asking, "Can I search the vehicle? Is that okay with you?" or "I am going to take a look in the car if that's okay with you." Coleman testified that Burnett answered "yes" in response to his request to search, and Burnett testified that he answered, "All right, okay." Additionally, the undisputed evidence shows that Burnett also responded with an affirmative hand gesture.

7.  After Burnett's affirmative responses to Coleman's request to search, Coleman opened the passenger-side door and found an empty ammunition magazine in plain view on a console between the front seats. After finding the magazine, Coleman handcuffed Burnett for safety reasons and searched the back of the vehicle, where he found a locked money bag. Coleman asked Burnett if he had a key to the bag, and Burnett responded, "Not on me; I think it's in the other car."

8.  Coleman placed Burnett in the patrol car and contacted Blue Lightening, an intelligence resource. After making initial contact with Blue Lightening, Coleman left the car, cut open the money bag with a knife, and discovered a vehicle rental agreement and methamphetamine.

9.  Coleman informed Burnett, who was sitting in the patrol car, that he was under arrest for possession of an illegal substance. Coleman then re-entered the patrol car and resumed his conversation with a Blue Lightening operator. Among other things, Coleman told the operator that Burnett had consented to the search. Coleman, and another officer who arrived on the scene, continued searching the Lincoln Navigator and found a gun and records documenting drug transactions.

## II.

In support of Burnett's first motion to suppress, Burnett argued that Coleman lacked probable cause or reasonable suspicion to stop him, and Coleman lacked probable cause, consent, or any valid basis to search his automobile.

In an order entered May 5, 2007, denying Burnett's first motion to suppress, the Court stated the following conclusions of law:  (1) Coleman had an objectively reasonable basis to believe that Burnett violated Arkansas traffic law, and the stop was legal; (2) Coleman's pre-search investigation was well within the Fourth Amendment; (3) Coleman did nothing to create a coercive environment; (4) a reasonable person in Coleman's position would have believed that Burnett gave his voluntary consent to search and that he comprehended the choice that he was making; (5) Burnett never limited or withdrew his consent, either expressly or impliedly; and (6) Coleman's search did not exceed the scope of the consent.

## II.

In support of his second motion to suppress**,** Burnett presents a DVD-video recording of portions of traffic stops that Coleman made on January 18, 2006,  before he stopped Burnett. Burnett contends that the recording reveals that Coleman targets vehicles with out-of-state license plates and that Coleman violated his right to equal protection and right to travel, as well as his right to be free from unreasonable search and seizure.

As stated from the bench at the close of the hearing held September 4, 2007,  the Court finds that the video recording provides no basis for reconsideration or alteration of the Court's previous findings that the traffic stop and search in this case pass muster under the Fourth Amendment.     Furthermore, even if Coleman violated Burnett's rights to equal protection and

right to travel, suppression of evidence pursuant to the exclusionary rule is a remedy for violations of the Fourth Amendment, and the Court declines to extend the rule as a remedy for other constitutional violations.

Burnett makes two additional arguments: (1) Coleman failed to follow Arkansas State Police policy for obtaining consent to search, and (2) Coleman's destruction of the money bag recovered from his vehicle exceeded the scope of any consent to search.

The Court finds that even if Coleman failed to follow Arkansas State Police Policy in obtaining Burnett's consent to search, Burnett's consent was voluntary.

As for the scope of the search, immediately before Burnett gave his consent, Coleman asked him whether he was transporting drugs or guns, and Burnett answered, "No." Accordingly, it was objectively reasonable for Coleman to believe that Burnett's consent extended to any area or container where drugs or guns might be stored. *See Florida v. Jimeno,* 500 U.S. 248, 251-52 (1991)(consent to search car included consent to search containers that might hold drugs).

Furthermore, before Coleman cut the money bag with a knife, he asked Burnett if he had the key, and Burnett replied "No." Burnett voiced no objection to Coleman cutting the bag, and it was objectively reasonable for Coleman to believe that cutting the bag was within the scope of consent. *See U.S. v. Siwek*, 453 F.3d 1079, 1086 (8th Cir. 2006)("Siwek argues that he effectively withdrew any consent to search the truck bed when he informed Goltz that he lacked the key to the tonneau cover. We do not agree that this statement amounts to a withdrawal of consent to search, which can only be accomplished by an unequivocal act or statement.").

**III.**

For the reasons stated, Defendant Burnett's second motion to suppress evidence (docket entry #31) is DENIED.

IT IS SO ORDERED THIS 13TH DAY OF SEPTEMBER, 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE